# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 16-970V

| | |
|---|---|
| ABDOLRAHIM NOORANI, | TO BE PUBLISHED |
| Petitioner, | |
| v. | Special Master Katherine E. Oler |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Filed: January 20, 2022<br>Corrected: February 3, 2022 |
| Respondent | Interim Attorneys' Fees and Costs |

*Carol L. Gallagher*, Carol L. Gallagher, Esquire, LLC, Somers Point, NJ, for Petitioner
*Lauren Kells*, U.S. Department of Justice, Washington, DC, for Respondent

### DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On August 10, 2016, Abdolrahim Noorani ("Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] (the "Vaccine Act" or "Program") alleging that he suffered Guillain-Barré syndrome and neurological injuries[3] as a result of the influenza vaccination he received on September 30, 2015. Pet. at 1, ECF

---

[1] This Decision will be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2012)). **This means the Decision will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

[3] On December 14, 2017, Petitioner filed an amended petition, alleging that he suffered from transverse myelitis as a result of the influenza vaccination he received on September 30, 2015. Am. Pet., ECF No. 47.

No. 1. At the time, Petitioner was represented by Mr. Maximillian Muller of Muller Brazil, LLP.[4]

On April 20, 2021, Petitioner filed an application for interim attorneys' fees and costs, requesting $97,898.70 in fees and $3,360.69 in costs related to the work of Ms. Carol Gallagher and $22,743.50 in fees and $17,273.22 in costs related to the work of Muller Brazil. Fees App. at 6, ECF No. 110. On May 5, 2021, Respondent filed a response stating it is within my discretion to award interim attorneys' fees and costs. Fees Resp., ECF No. 103. Respondent "defers to [me] to determine whether or not petitioner here has met the legal standard for interim fees and costs award." *Id.* at 2.

For the reasons discussed below, I hereby **GRANT IN PART** and **DEFER IN PART**[5] Petitioner's application and award a total of **$111,719.32** in interim attorneys' fees and costs to Carol L. Gallagher and **$27,087.22** in interim attorneys' fees and costs to Muller Brazil, LLP.

**I.      Legal Standard**

   **A.   Interim Attorneys' Fees and Costs**

The Federal Circuit has held that an award of interim attorneys' fees and costs is permissible under the Vaccine Act. *Shaw v. Sec'y of Health & Hum. Servs.,* 609 F.3d 1372 (Fed. Cir. 2010); *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343 (Fed. Cir. 2008). In *Cloer*, the Federal Circuit noted that "Congress [has] made clear that denying interim attorneys' fees under the Vaccine Act is contrary to an underlying purpose of the Vaccine Act." *Cloer v. Sec'y of Health & Hum. Servs.*, 675 F.3d 1358, 1361-62 (Fed. Cir. 2012).

In *Avera,* the Federal Circuit stated, "[i]nterim fees are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." *Avera*, 515 F.3d at 1352. Likewise, in *Shaw,* the Federal Circuit held that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375. *Avera* did not, however, define when interim fees are appropriate; rather, it has been interpreted to allow special masters discretion. *See Avera*, 515 F.3d; *Kirk v. Sec'y of Health & Hum. Servs.*, No. 08-241V, 2009 WL 775396, at *2 (Fed. Cl. Spec. Mstr. Mar. 13, 2009); *Bear v. Sec'y of Health & Hum. Servs.*, No. 11-362V, 2013 WL 691963, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2013). Even though it has been argued that a petitioner must meet the three *Avera* criteria -- protracted proceedings, costly expert testimony, and undue hardship -- special masters have instead treated these criteria as possible factors in a flexible balancing test. *Avera*, 515 F.3d at 1352; *see Al-Uffi v. Sec'y of Health & Hum. Servs.*, No. 13-956V, 2015 WL 6181669, at *7 (Fed. Cl. Spec. Mstr. Sept. 30, 2015).

---

[4] On October 3, 2017, Petitioner's current attorney, Ms. Carol Gallagher, was substituted in as Petitioner's counsel of record. ECF No. 40.

[5] I have explained in this Decision the information I require Petitioner to file in order to render a judgment regarding deferred costs. Failure to provide this information in a subsequent final motion for attorneys' fees and costs will result in a denial of these costs.

A petitioner is eligible for an interim award of reasonable attorneys' fees and costs if the special master finds that a petitioner has brought his petition in good faith and with a reasonable basis. §15(e)(1); *Avera*, 515 F.3d at 1352; *Shaw*, 609 F.3d at 1372; *Woods v. Sec'y of Health & Hum. Servs*, 105 Fed. Cl. 148 (2012), at 154; *Friedman v. Sec'y of Health & Hum. Servs.*, 94 Fed. Cl. 323, 334 (2010); *Doe 21 v. Sec'y of Health & Hum. Servs.*, 89 Fed. Cl. 661, 668 (2009); *Bear*, 2013 WL 691963, at *5; *Lumsden v. Sec'y of Health & Hum. Servs.*, No. 97-588V, 2012 WL 1450520, at *4 (Fed. Cl. Spec. Mstr. Mar. 28, 2012). The undue hardship inquiry looks at more than just financial involvement of a petitioner; it also looks at any money expended by a petitioner's counsel. *Kirk*, 2009 WL 775396, at *2. Referring to *Avera*, former Chief Special Master Golkiewicz in *Kirk* found that "the general principle underlying an award of interim fees [is] clear: avoid working a substantial financial hardship on petitioners and their counsel." *Id*.

**B. Good Faith**

The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Hum. Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Such a requirement is a "subjective standard that focuses upon whether petitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioner had an honest belief that his claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

**C. Reasonable Basis**

Unlike the good-faith inquiry, an analysis of reasonable basis requires more than just a petitioner's belief in his claim. *Turner*, 2007 WL 4410030, at *6-7. Instead, the claim must at least be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v. Sec'y of Health & Hum. Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).

While the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis…." *Id.* at 286. The Court in *Chuisano* found that a petition which relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290; *see also Turpin v. Sec'y Health & Hum. Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Hum. Servs.*, No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney). The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham v. Sec'y of Health &*

3

*Hum. Servs.*, No. 2019-1596, 971 F.3d 1337, 1346 (Fed. Cir. Aug. 19, 2020) (finding Petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert); *see also James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021) (finding that "the lack of an express medical opinion on causation did not by itself negate the claim's reasonable basis.").

Temporal proximity between vaccination and onset of symptoms is a necessary component in establishing causation in non-Table cases, but without more, temporal proximity alone "fails to establish a reasonable basis for a vaccine claim." *Chuisano*, 116 Fed. Cl. at 291.

The Federal Circuit has stated that reasonable basis "is an objective inquiry" and concluded that "counsel may not use [an] impending statute of limitations deadline to establish a reasonable basis for [appellant's] claim." *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017). Further, an impending statute of limitations should not even be one of several factors the special master considers in her reasonable basis analysis. "[T]he Federal Circuit forbade, altogether, the consideration of statutory limitations deadlines—and all conduct of counsel—in determining whether there was a reasonable basis for a claim." *Amankwaa v. Sec'y of Health & Hum. Servs.*, 138 Fed. Cl. 282, 289 (2018).

"[I]n deciding reasonable basis the [s]pecial [m]aster needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Hum. Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018). Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). Special masters and judges of the Court of Federal Claims have interpreted this provision to mean that petitioners must submit medical records or expert medical opinion in support of causation-in-fact claims. *See Waterman v. Sec'y of Health & Hum. Servs.,* 123 Fed. Cl. 564, 574 (2015) (citing *Dickerson v. Sec'y of Health & Hum. Servs.*, 35 Fed. Cl. 593, 599 (1996) (stating that medical opinion evidence is required to support an on-Table theory where medical records fail to establish a Table injury).

When determining if a reasonable basis exists, many special masters and judges consider a myriad of factors. The factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa*, 138 Fed. Cl. at 289. This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Hum. Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

## II. Discussion

### A. Undue Financial Hardship

The parties are in the midst of informal settlement negotiations. Petitioner is currently awaiting her Social Security Disability file from the Social Security Administration. Petitioner and her counsel have been litigating this claim for more than five years and have incurred over one

4

hundred thousand dollars in attorneys' fees and costs. Thus, I find it reasonable to award interim fees and costs at this juncture to avoid any undue financial hardship.

### B. Good Faith and Reasonable Basis

Respondent has not raised any specific objection to the good faith or reasonable basis for this claim and leaves such a determination to my discretion. *See* Fees Resp. I find that the petition was filed in good faith.

As discussed above, the threshold for reasonable basis is a much lower standard than the burden to prove entitlement to compensation by preponderant evidence. In making a reasonable basis determination, I must look at a totality of the circumstances, taking into account the factual basis for the claim and the medical and scientific support offered. Petitioner has filed extensive medical records in this case. *See* Exs. 1-28. Petitioner has also filed three expert reports. ECF Nos. 42, 64, 77. I find that Petitioner had a reasonable basis to file her claim.

As there is no other reason to deny the award of interim attorneys' fees and costs, I will award Petitioner's reasonable fees and costs in this instance.

### C. Attorneys' Fees related to Carol L. Gallagher

Petitioner requests a total of $97,898.70 in attorneys' fees. *See* Fees App. at 6.

1. Reasonable Hourly Rate

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

*McCulloch* provides the framework for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[6]

---

[6] The 2015–2016 Fee Schedule can be accessed at:
http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule2015-2016.pdf.
The 2017 Fee Schedule can be accessed at:
http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2017.pdf.
The 2018 Fee Schedule can be accessed at:
http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202018.pdf.

Ms. Gallagher, requests to be compensated at a rate of $363 per hour for work performed in 2017, $400 per hour for work performed in 2018, $400 per hour for work performed in 2019, $424 per hour for work performed in 2020, and $424 per hour for work performed in 2021. *See* Fees App. at 4. These rates are consistent with the Fee Schedule and with what Ms. Gallagher has been awarded in the past. *See Murray v. Sec'y of Health & Hum. Servs.*, No. 19-424V, 2021 U.S. Claims LEXIS 883 (Fed. Cl. Spec. Mstr. May 10, 2017); *Wunderler v. Sec'y of Health & Hum. Servs.*, No. 19-1468V, 2020 U.S. Claims LEXIS 2873 (Fed. Cl. Spec. Mstr. Dec. 1, 2020); *Walker v. Sec'y of Health & Hum. Servs.*, 18-366V, 2020 U.S. Claims LEXIS 2610 (Fed. Cl. Spec. Mstr. Nov. 24, 2020). I find the requested rates to be reasonable and that no adjustment is warranted.

2. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1522 (Fed. Cir. 1993). In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Hum. Servs.*, 38 Fed. Cl. 403, 406 (1997) (same). While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Hum. Servs.*, No. 08–243V, 2015 WL 2399211, at \*9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at \*26.

Petitioner's counsel has provided a breakdown of hours billed and costs incurred. Fees App. Ex A. I find that although Ms. Gallagher has kept careful billing records, a reduction is necessary due to time billed for administrative/secretarial tasks,[7] duplicative billing,[8] and excessive client communication.

Billing for administrative tasks is not appropriate. *See Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989) (stating that services that are "primarily of a secretarial or clerical nature ... should be considered as normal overhead office costs included within the attorneys' fee rates"); *see also Mostovoy v. Sec'y of Health & Hum. Servs.*, No. 02-10, 2016 WL 720969, at \*5 (Fed. Cl. Spec. Mstr. Feb. 4, 2016) (citing "reviewing invoices, setting up meetings, and making travel arrangements" as examples of administrative tasks); *Macrelli v. Sec'y of Health & Hum. Servs.*, No. 98–103, 2002 WL 229811, at \*7 (Fed. Cl. Spec. Mstr. Jan. 30, 2002) (stating that "time spent performing secretarial tasks is to be subsumed in the overhead costs of practicing law and is not

---

[7] *See, e.g.*, billing entry from 3/5/2018 reading "review of 3/02 email from client and attached information, notes to file, dictation to secretary." Fees App., Ex. A at 11. "Dictation to secretary" is not compensable time. *See also* billing entry from 3/15/2018 reading "final review of Dr. Steinman's report, dictation for filing." Fees App., Ex. A. at 12.

[8] *See, e.g.*, billing entry from 11/9/2019 stating "review of workers compensation information and decision (36 pp.) with memorandum to file" for 1.20 hours and billing entry from 1/9/2020 stating "review of workers compensation information with notes to file" for 1.30 hours;

6

reimbursable"); *Isom v. Sec'y of Health & Hum. Servs.,* No. 94–770, 2001 WL 101459, at *2 (Fed. Cl. Spec. Mstr. Jan. 17, 2001) (agreeing with respondent that tasks such as filing and photocopying are subsumed under overhead expenses). In addition, several of Ms. Gallagher's entries include time for attaching documents to emails or faxing documents. *See, e.g.*, billing entry of 3/25/2021 stating "preparation of email to client with attachment and input re: transcript". Fees Ap. Ex. A at 29.[9] While I recognize that attaching large files to emails can be a lengthy process, this is a secretarial task and therefore is not compensable.

I also will caution Ms. Gallagher to be cognizant of the time she spends on client communication. For example, from 2018-2019, approximately 20% of Ms. Gallagher's time was spent communicating with her client, and from 2020-2021, approximately 28% of her time was spent communicating with her client.[10] This figure pushes at the boundaries of reasonable time spent on client communication, and in the future, Ms. Gallagher should bill only for those client communications necessary to advance the case.[11] *See e.g., Robinson v. Sec'y of Health & Hum. Servs.*, No. 17-1848V, 2021 U.S. Claims LEXIS 364 at *6 (Fed. Cl. Spec. Mstr. Feb. 11, 2021) (reducing counsel's fees by 2% for excessive client communication); *D.S. v. Sec'y of Health & Hum. Servs.*, No. 10-77V, 2017 U.S. Claims LEXIS 1693 at *7-*8 (Fed. Cl. Spec. Mstr. Nov. 20, 2017) (reducing counsel's fees by 10% for excessive client communication).

Based on the above, I therefore will reduce Ms. Gallagher's requested fee amount by 10%, for a reduction of **$9,789.87**.[12]
.

Total attorneys' fees to be awarded: **$88,108.83.**

### D. Reasonable Costs related to Carol Gallagher, Esquire, LLC.

---

[9] *See also* billing entries from 10/6/2017, 10/13/2017, 10/16/2017, 10/19/2017, 3/5/2018, 5/23/2018, 7/3/2018, and 7/6/2018. This list is not a complete accounting of all administrative or secretarial billing entries, but rather a representative sample.

[10] I note that these figures do not include time spent communicating with Petitioner regarding his affidavit, or regarding his worker's compensation case.

[11] For example, on July 6, 2018, Ms. Gallagher spent 0.20 hours to email her attachments and comments to Dr. Steinman's report to Petitioner, and 0.25 hours to email Petitioner Respondent's expert report and her comments. On July 8, 2018, Ms. Gallagher spent 0.15 hours to review Petitioner's critique of Respondent's expert report and 0.10 hours to email Dr. Steinman Petitioner's notes on Respondent's expert report. Then on 10/6/2020, Ms. Gallagher spent 1.40 hours on the telephone with Petitioner, then spent 0.25 hours on a "follow up memorandum and email to confirm what I need (purpose of email is he has a heavy accent and is not well understood." On 10/8/2020, Ms. Gallagher spent 0.30 hours to prepare a "detailed email to client with necessary information and confirmation of points discussed during 10/06 telephone communication." Fees App. Ex. A at 26, 27.

[12] In making this reduction, I have also considered the overall reasonableness of the fees and costs request. This case has been in settlement negotiations since September 3, 2020. No expert reports have been filed since September 17, 2018. Based on my experience in reviewing similarly situated cases, I find that a 10% reduction is appropriate both to correct for improper billing, and to reduce the hours billed to reflect the complexity of the case.

Petitioner requests a total of $23,673.19 in costs, which includes obtaining medical records, medical literature, postage costs, and expert witness fees. Fees App. Ex. A. at 8.

1. Petitioner's Expert Costs

Petitioner requests $23,312.50 for work performed by Dr. Lawrence Steinman. Fees App., Ex. E at 3. Petitioner requests Dr. Steinman be compensated at $500.00 per hour for work done from 2018-2019. Dr. Steinman has previously been awarded his requested rate and I see no reason to disturb such a request. *See Robinson v. Sec'y of Health & Hum. Servs.*, No. 14-952V, 2020 U.S. Claims LEXIS 321 (Fed. Cl. Spec. Mstr. Jan. 17, 2020). Petitioner also requests that Dr. Steinman be compensated at $550.00 an hour for work performed in 2020 and 2021. The top end of compensation for experts in the Program is generally $500.00 an hour. *See L.M. v. Sec'y of Health & Hum. Servs.*, No. 14-714V, 2017 U.S. Claims LEXIS 1419 (Fed. Cl. Spec. Mstr. Sept. 29, 2017). While Dr. Steinman's suggestion that his hourly rate increase if only to account for inflation certainly merits consideration, this case is not overly complex. Dr. Steinman has opined that Petitioner's TM was caused by molecular mimicry, an opinion he has offered in at least thirteen other cases. *See, e.g.*, *Broekelschen v. Sec'y of Health & Hum. Servs.*, 618 F.3d 1339 (Fed. Cl. 2010). I find that although Dr. Steinman may be entitled to $550.00 an hour in cases presenting novel theories, a more appropriate rate of compensation in this case is his usual $500.00 an hour. This will result in a total deduction of **$62.70.**

Dr. Steinman billed 43.75 hours hours between 2017-2018 to produce two expert reports in this case. Exs. 30, 65. I find the time spent producing these reports to be reasonable and therefore award these costs in full.

Dr. Steinman also spent 0.25 hours on September 24, 2018 on "response to email", 0.75 hours on 12/11/2018 to review records, 1.25 hours on 4/22/2019 for review of an MRI and "email", 0.75 hours on 6/16/2020 to review a UPenn Records, and 0.5 hours on 3/3/2021 to review "email from [Carol] Gallagher and review of activities in case." It is unclear why Ms. Gallagher asked Dr. Steinman to conduct expert review while the case was in settlement discussions. While on this occasion I will grant these fees, in the future, Ms. Gallagher should be cognizant of which stage of litigation a case is in and provide clarity as to why expert consultation is needed during settlement discussions.

Total expert costs awarded: **23,249.80.**

2. Miscellaneous costs

I have reviewed Petitioner's miscellaneous costs and supporting documentation and find these costs to be reasonable. I therefore award them in full.

Total costs to be awarded: **$23,610.49**.

**E. Attorneys' Fees related to Muller Brazil, LLP**

Petitioner requests a total of $22,743.50 in attorneys' fees. *See* Fees App. Ex. B at 16.

1. <u>Reasonable Hourly Rate</u>

Petitioner's attorneys request the following rates for work performed from 2016-2020:[13]

| Attorney | 2015 | 2016 | 2017 |
| --- | --- | --- | --- |
| MJM (attorney) | $255.00 | $275.00 | $300.00 |
| MTL Paralegal | $125.00 | $125.00 | $125.00 |

These rates are consistent with the Fee Schedule and with what attorneys and paralegals from Muller Brazil have been awarded in the past. *See B.E. v. Sec'y of Health & Hum. Servs.*, No. 15-1458V, 2019 U.S. Claims LEXIS 2210 (Fed. Cl. Spec. Mstr. Nov. 13, 2019). I find the requested rates to be reasonable and that no adjustment is warranted.

2. <u>Hours Reasonably Expended</u>

Petitioner's counsel has provided a breakdown of hours billed and costs incurred. Fees App. Ex B. I find the hours to be largely reasonable, however I find a reduction is appropriate for time billed for administrative tasks and overstaffing. *See Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201. 214-15 (Fed. Cl. 2009) (affirming a special master's reduction of fees for overstaffing where three attorneys from two different firms worked on the same case); *Van Vessem v. Sec'y of Health & Hum. Servs.*, No. 11-132V, 2018 U.S. Claims LEXIS 955, 2018 WL 3989517, at *7 (Fed. Cl. Spec. Mstr. July 3, 2018) (finding that "it is not reasonable for both an attorney and a paralegal to bill for reviewing each filing in the case").

The attorney entries to be reduced from 2016 occur on 2/21/2016 (two entries totaling 0.5 hours),[14] 7/19/2016 (0.2 hours), 8/10/2016 (four entries totaling 0.4 hours), 8/19/2016 (0.1 hours), 8/23/2016 (0.1 hours), 9/7/2016 (two entries totaling 0.2 hours), 9/12/2016 (0.2 hours), 10/25/2016 (0.1 hours), 11/21/2016 (0.1 hours), and 12/1/2016 (0.1 hours), for a total reduction of two hours, or **$550.00**.

The paralegal entries to be reduced from 2016 occur on 3/22/2016 (two entries totaling 0.4 hours), 3/31/2016 (two entries totaling 0.3 hours), 7/19/2016 (0.2 hours), 8/9/2016 (eight entries totaling 1.7 hours), 10/25/2016 (0.1 hours), 10/31/2016 (0.1 hours), 11/14/2016 (three entries totaling 0.6 hours), 12/8/2016 (four entries totaling 0.5 hours), and 12/9/2016 (two entries

---

[13] I note that while Mr. Muller has not expressly stated that "MJM" is an attorney and "MTL" is a paralegal, the rates charged for these individuals are consistent with what Mr. Muller has previously charged in other cases. In the future, Mr. Muller should ensure his bills include a key to specify 1) whom a timekeeper is and b) if that timekeeper is either an attorney or a paralegal.

[14] Mr. Muller has billed two entries on 2/21/2016, each totaling 0.5 hours, to travel to a meeting with Petitioner. Travel time may be billed at one-half of an attorney's regular rate. *See* B.E., 2019 US. Claims LEXIS 2210 at *23. I have therefore reduced these entries to 0.25 hours each, resulting in a total reduction of 0.5 hours.

totaling 0.2 hours), for a total reduction of 4.1 hours, or **$512.50**.

The attorney entries to be reduced from 2017 occur on 1/23/2017 (0.1 hours), 2/23/2017 (0.1 hours), 3/24/2017 (0.1 hours), 4/21/2017 (0.1 hours), 5/9/2017 (two entries totaling 0.2 hours), 5/9/2017 (two entries totaling 0.2 hours), 5/12/2017 (0.1 hours), 6/1/2017 (0.1 hours), 8/17/2017 (0.1 hours), 9/15/2017 (0.1 hours) and 10/3/2017 (0.1 hours), for a total of 1.3 hours, **$390.00**.

The paralegal entries to be reduced from 2017 occur on 1/4/2017 (two entries totaling 0.4 hours), 1/9/2017 (two entries totaling 0.2 hours), 1/11/2017 (two entries totaling 0.4 hours), 1/18/2017 (two entries totaling 0.2 hours), 1/19/2017 (two entries totaling 0.8 hours), 2/2/2017 (two entries totaling 0.2 hours), 2/8/2017 (two records totaling 0.2 hours), 2/22/2017 (four entries totaling 0.6 hours), 2/23/2017 (two entries totaling 0.4 hours), 3/20/2017 (0.1 hours), 4/6/2017 (two entries totaling 0.2 hours), 5/31/2017 (two entries totaling 0.4 hours), 7/17/2017 (0.2 hours), 8/3/2017 (two entries totaling 0.2 hours), 8/16/2017 (0.2 hours), 8/31/2017 (0.2 hours), and 9/14/2017 (four entries totaling 0.6 hours), for a total of 5.5 hours, or **$687.50**.

In addition, an entry from timekeeper KRY[15] for a "telephone call to Urology Care Alliance re: confirmation of records received" is billed on 2/22/2017 at a rate of $165.00 an hour. This task is appropriate for a paralegal to perform and therefore will be compensated at a rate of $125.00 an hour, resulting in a reduction of **$4.00**.

Total reduction: **$2,144.00**.

Total attorneys' fees to be awarded: **$20,599.50.**

### F. Reasonable Costs related to Muller Brazil, LLP

Petitioner requests $17,273.22 in costs, which includes obtaining medical records, medical literature, postage costs, travel expenses, the Court's filing fee, and expert witness fees. Fees App. Ex. D at 2.

1. Petitioner's Expert Costs

Petitioner requests $9,875.00 for work performed by Dr. Eric Gershwin. Fees App., Ex. D at 17. Petitioner requests Dr. Gershwin be compensated at $500.00 per hour. Dr. Gershwin has previously been awarded his requested rate and I see no reason to disturb such a request. *See A.S. v. Sec'y of Health & Hum. Servs.*, No. 15-520V, 2020 U.S. Claims LEXIS 1196 (Fed. Cl. Spec. Mstr. June 4, 2020); *Hoskins v. Sec'y of Health & Hum. Servs.,* 2017 U.S. Claims LEXIS 934 (Fed. Cl. Spec. Mstr. July 12, 2017). Dr. Gershwin's bill states that "to review very extensive medical files, petition, literature, prepare report, and discuss with attorney" he spent 19.75 hours. Attorneys' costs are subject to the same reasonableness requirements as attorneys' fees. *Apuzzo v. Sec'y of Health & Hum. Servs.*, No. 17-1915V, 2021 U.S. Claims LEXIS 2006 (Fed. Cl. Spec. Mstr. Aug.

---

[15] This is the only entry for timekeeper KRY. Because this task was reduced to a paralegal rate, I have not analyzed whether $165.00 per hour is an appropriate rate for this timekeeper.

23, 2021). Block billing is clearly disfavored in the program. *See, e.g.*, *Casteneda v. Sec'y of Health & Hum. Servs.*, 2018 U.S. Claims LEXIS 1959. Indeed, the Vaccine Program's Guidelines for Practice state as follows: "[e]ach task should have its own line entry indicating the amount of time spent on that task. Lumping together several unrelated tasks in the same time entry frustrates the court's ability to assess the reasonableness of the request."[16] *Id.* Dr. Gershwin has also been warned before that block billing is not appropriate. *See, e.g.*, *Stuart v. Sec'y of Health & Hum. Servs.*, No. 16-940V, Dkt. No. 96 (available at https://ecf.cofc.uscourts.gov/cgi-bin/show_public_doc?2016vv0940-96-0). I will therefore defer payment for Dr. Gershwin's expert fees at this time. Petitioner may re-apply for costs related to Dr. Gershwin in a motion for final attorneys' fees and costs.

Petitioner also requests $2,000.00 for work performed by Dr. Nizar Souayah. Fees App. Ex. D at 34. Dr. Souayah's invoice charges $500.00 an hour for four hours of work. In the description of work performed, Dr. Souayah writes "Abdolrahim Noorani," *Id.* Dr. Souayah did not provide an expert report in this case, Petitioner's motion for interim fees does not make it clear what work he performed, and Dr. Souayah's invoice does not contain any information rationalizing why he should be paid. Accordingly, I will defer costs related to Dr. Souayah at this time. Petitioner may re-apply for costs related to Dr. Souayah in a motion for final attorneys' fees and costs.

Petitioner requests $1,125 for work performed by Dr. Lawrence Steinman. Fees App, Ex. D at 37. Petitioner requests Dr. Steinman be compensated at $500.00 per hour. I find 2.25 hours for reviewing the records and Dr. Gershwin's notes to be reasonable. I therefore will award costs related to Dr. Steinman in full.

2. <u>Miscellaneous costs</u>

Petitioner requests $5,398.22 in miscellaneous costs. I have reviewed Petitioner's miscellaneous costs and supporting documentation and find these costs to be reasonable,[17][18] with one small exception. Petitioner requests $93.47 for obtaining medical records from Jefferson University Physicians. However, the supporting documentation lists a charge for $57.97. Fees App., Ex. E at 27. This results in a deduction of **$35.50.**

Total costs to be awarded: **$6,487.72.**

**III.   Conclusion**

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of

---

[16] Guidelines for Practice Under the National Vaccine Injury Compensation Program ("Guidelines for Practice") at 67.

[17] Although Petitioner's receipt for FedEx does not include a dollar amount, I find $48.00 to be a reasonable amount to pay for FedEx shipping. I accordingly award this cost in full.

[18] Although Petitioner has not provided a receipt for medical records from Lower Bucks Hospital, records from this hospital are in the record as Exhibit 7. I find $53.48 to be a reasonable amount to pay to obtain medical records, and therefore award this cost in full.

interim fee and cost awards, and based on the foregoing, I **GRANT IN PART** Petitioner's application, as follows:

> A sum in the amount of **$111,719.32**, representing reimbursement of Ms. Carol Gallagher's interim fees and costs, in the form of a check jointly payable to Petitioner and Carol Gallagher.
>
> A sum in the amount of **$27,087.22** representing reimbursement of Petitioner's interim fees and costs, in the form of a check jointly payable to Petitioner and Muller Brazil, LLP.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this decision.[19]

**IT IS SO ORDERED.**

**s/ Katherine E. Oler**
Katherine E. Oler
Special Master

---

[19] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of a notice renouncing the right to seek review.